
FILED
DEC 29 2014
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 10-155-BLG-SPW |
| Plaintiff/Respondent, | CV 14-075-BLG-SPW |
| vs. | ORDER DENYING § 2255 AND DENYING CERTIFICATE OF APPEALABILITY |
| NICHOLAS JOHN MONTANO, | |
| Defendant/Movant. | |

On June 11, 2014, Defendant/Movant Nicholas John Montano filed a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Montano is a federal prisoner proceeding pro se.

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing

1

§ 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## I. Background

Montano was indicted on one count of being a felon in possession of a firearm and ammunition, a violation of 18 U.S.C. § 922(g)(1) (Count 1), and one count of possessing a stolen firearm, a violation of 18 U.S.C. § 922(j) (Count 2). Indictment (Doc. 1) at 2-3. Assistant Federal Defender Mark Werner was appointed to represent him. Order (Doc. 5).

The following evidence was presented at trial. At about ten minutes before midnight on July 9, 2010, Officer Robinson of the Billings Police Department was on patrol on the south side of Billings, watching a house known to be associated with drug activity. He saw a Ford Expedition depart from the house and decided to follow it at a distance. At one point, it stopped in an alley or parking area near Lee's Saloon, and Robinson heard two female voices arguing. Robinson drove by, and the vehicle pulled back onto the road. Robinson turned around and stopped the Expedition because it did not have a front license plate.

The driver and one of the passengers were both 17-year-old girls.[1] Although she was asked for proof of insurance and registration, the driver had none. She did

---

[1] Under the city's municipal code, children under 18 had to be home by midnight. The Expedition's rear plate was from Big Horn County. The girls are not named in this Order because they were minors at the time of the underlying incident.

2

not look in the glove box. Montano, who was 25 at the time, was in the front passenger seat. Anthony Delgado was in the back seat on the driver's side. Montano gave his name as "James Dill" and handed the officer a fictitious identification card, ostensibly from the Montana Department of Corrections. A records check revealed that both Dill and Delgado were on probation for felony offenses, which meant they should not be together. Robinson suspected Dill/Montano and Delgado had been drinking as well, another violation of the terms of their probation. A breath test confirmed his suspicion. Dill was also noted as an "officer caution" probationer, meaning he had been armed at the time of previous contacts with police or exhibited aggressive behavior. Robinson called for backup.

With the assistance of BPD Officer Krause, all four occupants were removed from the vehicle. They sat down at the curb. Robinson asked the driver to consent to a search of the vehicle. She was reluctant and nervous, alternating between burying her head in her hands and watching Robinson to see what he was doing in and around the vehicle. Robinson asked her to consent to a search at different points during the encounter. At one point she asked him what he was looking for. He told her he wanted to know if there were any illegal drugs or weapons in the vehicle. She said there were none. She also said she was concerned he would "mess up" clothing in the back of the vehicle. He said he wanted to search the

3

areas where people were sitting and would not look in the back. Dill/Montano told the driver she did not have to let Robinson search and she should not because the vehicle was not hers. She consented anyway.

In the glove box, on top of the other contents, Robinson found a Beretta 9-mm semiautomatic pistol. The magazine was in and Krause recalled there was a round in the chamber. He asked the four occupants who was responsible for the gun. No one responded. Because Dill/Montano had been sitting in the front passenger seat with immediate access to the gun, Robinson told Krause to handcuff him. When Krause approached, Montano jumped up and ran. Krause chased him for about a hundred yards. He had to use his taser twice to stop and subdue Montano. Meanwhile, back at the curb, Delgado and the two girls all repeatedly said they did not know there was a gun in the vehicle.

Montano and Delgado were transported to the local jail. There, officers recognized Montano and verified his true identity. They also discovered an active arrest warrant for him, issued by the State of Idaho. A short while later, ATF Agent Feuerstein determined the gun had been reported stolen about a week before the traffic stop.

Delgado testified at trial that, while the Expedition was stopped in the alley by Lee's Saloon, he heard some girls outside the vehicle arguing. As there were people behind and in front of the Expedition, it could not leave the alley. He saw

4

Montano pull a black handgun out of his waistband, saw him making a motion consistent with putting a round in the chamber, and heard the click of the gun being cocked. Eventually they were able to pull out of the alley. When Robinson's vehicle appeared behind them with its top lights activated, Delgado said, Montano put the gun into the glove box.

On cross-examination, Delgado admitted he had not told an ATF agent who interviewed him before trial that he heard the click of a round being chambered. He also admitted he told the agent he got into the vehicle at Lee's, instead of at the house Robinson was watching, and that this part of his statement to the agent was untrue. Delgado had told a defense investigator that he did not see anything but only heard the sound of the gun being cocked and then heard the glove box open when the officer's vehicle came up behind them. He also told a defense investigator that he told the driver she should not consent to a search of the vehicle. Asked why he did not run away like Montano did, Delgado said he was too slow.

In the defense case-in-chief, the other female passenger testified that she did not see or hear any indication that Montano or anyone else had a gun. In closing argument, the defense emphasized Delgado's willingness to say several things that were not true to minimize consequences to himself and the prosecution's failure to call the driver as a witness.

Judge Cebull, who presided at trial, dismissed Count 2 because there was no

evidence to show that Montano knew or should have known the gun had been stolen. The jury deliberated for about 40 minutes and returned a verdict of guilty on Count 1. Verdict (Doc. 28) at 1.

On February 2, 2012, Montano was sentenced to serve 78 months in prison, to be followed by a three-year term of supervised release. Minutes (Doc. 43); Judgment (Doc. 45) at 2-3.

Montano appealed, challenging the sufficiency of the evidence. His conviction was affirmed. Mem. at 1-2, *United States v. Montano*, No. 12-30057 (9th Cir. Mar. 21, 2013) (Doc. 58).

Montano timely filed his § 2255 motion on June 11, 2014. 28 U.S.C. § 2255(f)(1).

## II. Claims and Analysis

Montano's claims are reorganized here, but all are addressed.

Montano asserts that counsel was ineffective for failing to object to a hearsay statement and to prosecutorial vouching in closing argument. Mot. § 2255 (Doc. 60) at 34 ¶ 5A-B. He also asserts that he was "denied counsel in the trial process," *id.* at 6 ¶ 5D, and he asserts cumulative prejudice, *id.* at 5 ¶ 5C.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Montano must allege facts sufficient to support an inference (1) that counsel's performance fell

below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Failure to Object to Certain Testimony

Montano contends that counsel should have objected to multiple uses by the prosecution of statements made by Delgado out of court. Mot. §2255 (Doc. 60) at 17-18 ¶¶ 56-63; Br. in Supp. (Doc. 61) at 5-9. This claim is predicated on a misunderstanding of the rules of evidence.

Delgado testified on direct examination that he heard the click of a gun and saw Montano holding the gun in his hands, "messing with it." 2 Trial Tr. (Doc. 53) at 174:22-25, 177:17-179:16. That was direct, non-hearsay evidence based on Delgado's personal knowledge. Fed. R. Evid. 602, 801(c). If the jury believed him, it was also evidence sufficient to support Montano's conviction. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *In re Winship*, 397 U.S. 358, 364 (1970); 9th Cir. Jury Instr. (Crim.) No. 8.65 (2010) (Doc. 27 at 13). After Delgado's direct examination, the defense showed, through cross-examination, that Delgado had previously said things to Agent Feuerstein that were inconsistent with his trial testimony. 2 Trial Tr. at 185:3-186:16, 188:1-21; Fed. R. Evid. 613. Delgado's

7

prior inconsistent statements were not offered by the defense for the truth of their contents and so were not hearsay. Fed. R. Evid. 801(c)(2). When Delgado was impeached, his prior consistent statements became admissible non-hearsay statements, and he testified to their truth based, again, on his own personal knowledge. 2 Trial Tr. at 190:1-192:3; Fed. R. Evid. 602, 801(d)(1)(B). Further impeachment, *see* 2 Trial Tr. at 192:17-193:22, again demonstrated for the jury Delgado's willingness to lie. Fed. R. Evid. 613, 801(c)(2).

In sum, the prosecution introduced admissible evidence to prove the truth of its allegations that Montano had the gun in his hands and was the person who put it in the glove box. The defense introduced admissible evidence to show that the prosecution's only witness, Delgado, should not be believed because he was a self-admitted liar.

None of the objections Montano claims counsel should have made was likely to be sustained. And even if they had been sustained, there is no reasonable probability that the prosecution would have been unable to show what it showed and no reasonable probability the defense would have been able to show something it did not show. Neither prong of the *Strickland* test is met. This claim is denied.

### B. Failure to Object to Vouching

Montano also contends that counsel should have objected to instances in which the prosecutor "was impermissible (sic) conveying his personal opinion of

8

Delgado's credibility." Mot. § 2255 at 22; *see generally* Mot. § 2255 at 22-23 ¶¶ 79-82; Br. in Supp. at 10-13.

Vouching occurs when the prosecution "place[s] the prestige of the government behind the witness" or "indicate[s] that information not presented to the jury supports the witness's testimony." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980). The prosecution did not even come close to doing that. *See* 2 Trial Tr. at 230:17-237:20, 247:17-250:6. The prosecutor said that Delgado told the jury what he saw and urged the jury to believe Delgado, but that is permissible argument. It does not carry the prosecutor's personal assurance of what Delgado saw. It does not convey to the jury that law enforcement has some source of information other than Delgado or some source of information that Delgado must be telling the truth. Although Montano says the prosecutor implied he believed Delgado, nothing the prosecutor said actually implied that he personally believed Delgado. And the jury knew that what the prosecutor might or might not believe was irrelevant anyway. *See, e.g.*, 2 Trial Tr. at 223:16-224:11, 247:18-248:3.

Because there was nothing objectionable about the prosecutor's closing argument, neither prong of the *Strickland* test is met. This claim is denied.

### C. "Denial" of Counsel

Montano claims he was deprived of counsel altogether in one respect at trial. Officer Krause testified that there was a round in the chamber of the gun when it

9

was removed from the glove box. Delgado, too, testified that he heard the click of a gun being cocked, that is, of a round entering the chamber. In closing argument, however, counsel misstated that only Delgado's testimony indicated there was a round in the chamber. Montano claims that this misstatement amounted to a total deprivation of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). Mot. § 2255 at 25-26 ¶¶ 94-96; Br. in Supp. at 14.

By definition, an identifiable mistake by counsel is not a *Cronic* claim. *Id.* at 656-60. This is a *Strickland* claim. Although Montano claims he was totally deprived of an opportunity to cross-examine Krause about the round in the chamber because counsel missed that statement in Krause's testimony, he must nonetheless demonstrate prejudice under *Strickland*.

There is no reasonable probability that Montano would have been acquitted had Krause been cross-examined on the point at issue. Even if Krause had changed his testimony and said there was not a round in the chamber or, like Robinson, he was not sure one way or the other, the jury would have been left with a materially identical picture of the evidence. Delgado testified that he saw Montano "messing with" the gun, heard a click that he inferred was the cocking of the gun, and saw Montano put the gun in the glove box. That was the testimony at issue. The fact that Krause found a round in the chamber corroborated Delgado's testimony to the same extent the discovery of a gun in the glove box corroborated

10

Delgado's testimony; the question was who put it there. This claim is denied.

## D. Cumulative Prejudice

As there was, at most, one error by counsel, there can be no cumulative prejudice from multiple errors. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). This claim, Mot. § 2255 at Br. in Supp. at 13-14, is denied.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Montano's claims do not meet the relatively low threshold of § 2253(c)(2). His claim regarding the use of Delgado's prior statements at trial and his claim of prosecutorial vouching are both predicated on misunderstanding of the governing law. His claim that he was entirely deprived of counsel to cross-examine Officer Krause about whether there was a round in the chamber of the gun is not a *Cronic*

claim but a *Strickland* claim. Counsel's mistake was not prejudicial because Krause's testimony on the round in the chamber corroborated Delgado's trial testimony to precisely the same extent that the discovery of a gun in the glove box corroborated Delgado's testimony. The question was who put the gun there, not whether there was a round in the chamber. There was no cumulative error because there was, at most, one error, and it was not prejudicial.

Montano's motion presents no open question. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Montano's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 60) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Montano files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 14-75-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Montano.

DATED this 29th day of December, 2014.

SUSAN P. WATTERS
United States District Judge